IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NANETTE G. LOVE,                          )
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )  CIVIL NO. 1:03CV00746
                                          )
JOHN E. POTTER, POSTMASTER                )
GENERAL, UNITED STATES POSTAL             )
SERVICE,                                  )
                                          )
              Defendant.                  )

<u>MEMORANDUM OPINION</u>

BULLOCK, District Judge

     On August 1, 2003, Plaintiff, Nanette G. Love, submitted her
<u>pro se</u> Complaint and Application for Leave to Proceed <u>In Forma
Pauperis</u> to the Clerk of Court.  On August 6, 2003, <u>in forma
pauperis</u> status was granted, and Plaintiff's Complaint was filed.
On March 18, 2004, Defendant, John E. Potter, Postmaster General,
United States Postal Service, filed a motion to dismiss pursuant
to Fed. R. Civ. P. 12(b)(6) and 8(a).  On April 21, 2004,
Plaintiff filed a motion to amend her Complaint.  On August 11,
2004, the court denied Defendant's motion to dismiss without
prejudice and allowed Plaintiff twenty days to file an amended
complaint.  On September 7, 2004, Plaintiff filed an amended <u>pro
se</u> Complaint ("Amended Complaint").[1]

--------------------------------

     [1] Plaintiff's Amended Complaint was filed a few days after
the deadline set by the court.  Likewise, Defendant's motion for
summary judgment was filed a few days late.  Nevertheless, the
court will treat each document as timely filed and will resolve
                                              (continued...)

In her Amended Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of race and sex (including sexual harassment and hostile work environment) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-16, *et seq.*, on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621, *et seq.*, and on the basis of disability in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. §§ 701, *et seq.* In addition, Plaintiff alleges that Defendant retaliated against her for reporting these violations and that she was constructively discharged.

This matter is before the court on Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Defendant has also filed a motion to strike exhibits attached to Plaintiff's "Response in Motion For Denial of Summary Judgment in Favor of Defendents [sic]." For the reasons stated below, Defendant's motion for summary judgment will be granted. Therefore, Defendant's motion to strike is moot.

FACTS

---

[1](...continued)
the issues on the merits.

2

Plaintiff is an African-American female born in 1950. At
the time she resigned, Love had been employed by the United
States Postal Service ("Postal Service") at its Bulk Mail Center
in Greensboro, North Carolina for over twenty-two years. In
1996, Philip Burns became the Manager of Distribution Operations
at the Greensboro Bulk Mail Center. Rose Gray was Plaintiff's
supervisor at that facility from September, 1998 until February,
2001.[2]

Plaintiff experienced a number of work related injuries
during her tenure with the Postal Service. Between 1985 and
1998, the Office of Worker's Compensation Programs ("OWCP")
accepted four injuries under the Federal Employees Compensation
Act that contributed to Plaintiff's lower back problems.
Additionally, on April 3, 2001, Plaintiff was struck in the head
by a falling piece of cinder block as she walked through a work
area, which led to a fifth OWCP claim.

According to Plaintiff, she was the victim of race, sex,
age, and disability discrimination as well as being subjected to
sexual harassment and a hostile work environment. In support of
her position, she points to an assortment of incidents. On

_____

[2] In her Equal Employment Opportunity Commission and federal
court complaints, Plaintiff focuses her claims of discrimination
and retaliation on the actions of Burns and Gray. However, Gray
was not always Plaintiff's supervisor when these incidents
occurred. For example, Love reports being sent home from work on
three occasions for lack of proper medical documentation. The
record shows that supervisor Gloria Parker sent her home on
November 12, 1999, and supervisor Larry Mahaffey sent her home on
March 28, 2000.

March 8, 1997, Plaintiff received a letter on behalf of Burns identifying her as an "accident/injury repeater." (Am. Compl. Ex. (One-page letter from Postal Service to Plaintiff).) On March 3, 1999, Burns rubbed Plaintiff on the back while congratulating her for teaching a ceramics class for juveniles. In July of 1999, Burns "run up to" Love on a motorized scooter. (Def.'s Mem. Supp. Mot. Summ. J. (hereinafter "Def.'s Mem. Supp.") Ex. A, Attach. 11, p. 117.) Love reported the incident to a Postal Service safety specialist. On November 12, 1999, March 28, 2000, and May 10, 2000, Plaintiff was sent home from work by her supervisors for lack of proper medical documentation. On May 12, 2000, Plaintiff stated in an Equal Employment Opportunity Commission ("EEOC") complaint that Burns asked her "about being a team player," to which she responded that she was "Union," and that Burns had been attacking her ever since. Id. at p. 116.)

On April 3, 2001, after Love was struck by a falling piece of cinder block at work, Burns told other employees that he would wait with Plaintiff until medical assistance arrived. Love interpreted this as an attempt by Burns to be alone with her. On June 25, 2001, Plaintiff's bid for a new job assignment was denied. On July 3, 2001, Burns invited Plaintiff to a pool party at his home. On August 3, 2001, Plaintiff received a Letter of Warning from the Postal Service based on unsatisfactory attendance and tardiness. On unspecified dates, Plaintiff's documents related to her requests for accommodation were "lost,

4

misplaced or misrouted." (Am. Compl. ¶ 9.) On unspecified dates, Burns referred to Love as "the LWOP Lady," LWOP being the Postal Service's acronym for Leave Without Pay. (Def's Mem. Supp. Ex. G, p. 1-1.) On unspecified dates, Burns stared and leered at Plaintiff after placing her at a work station that he could see from his doorway.

Plaintiff also claims that she was retaliated against for her numerous discrimination and safety complaints as well as union activity. Love decided to retire effective August 31, 2001, because she "could not take the harassment and intimidation any longer." (Am. Compl. ¶ 11.) According to Plaintiff, her resignation constituted a constructive discharge.

DISCUSSION

I. Standard of Review

Summary judgment must be granted when an examination of the pleadings, affidavits, interrogatories, and other proper exhibits demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of persuasion on all relevant issues. Celotex, 477 U.S. at 323. Once the moving party has met that burden, the non-moving party must then persuade the court that a genuine issue remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

5

U.S. 574, 586-87 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); see also Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994) (noting that the moving party on summary judgment can simply argue the absence of evidence by which the non-movant can prove her case). Conclusory statements, speculative allegations, and "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002). All reasonable inferences are to be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255.

II. Improper Parties

When suing a government agency for a violation of Title VII, the ADEA, or the Rehabilitation Act, the head of the agency is the only appropriate defendant. See 42 U.S.C. § 2000e-16(c); Birkbeck v. Marvel Lighting Corp, 30 F.3d 507, 511 (4th Cir. 1994) (holding that an individual employee is not a proper defendant in ADEA lawsuit); Keene v. Potter, 232 F. Supp. 2d 574, 580 (M.D.N.C. 2002) ("in a Title VII suit brought by a federal employee, the only proper defendant is the head of the agency"); see also 29 U.S.C. § 794a(a)(1) (stating that administrative

6

procedures set forth in 42 U.S.C. § 2000e-16 apply to federal employees seeking relief under Rehabilitation Act); Wilson v. Dimario, No. 97-2252, 1998 U.S. App. LEXIS 6574, at *7 (4th Cir. Mar. 31, 1998) (noting that, under Title VII, "federal employees cannot be held liable in their individual capacities"); Kroggel v. Runyon, No. 92-1995, 1993 U.S. App. LEXIS 12589, at *1, n.1 (7th Cir. 1993) ("The only proper defendant in a discrimination action brought under the Rehabilitation Act is the Postmaster General of the United States Postal Service."). Although Love included several improper parties in her original complaint, she correctly names John E. Potter, Postmaster General, United States Postal Service, as the sole defendant in her Amended Complaint.


III. Title VII

Love alleges that Defendant discriminated against her on the basis of race and sex in violation of Title VII. See 42 U.S.C. § 2000e-16, et seq. Prior to filing a lawsuit under Title VII, a plaintiff must exhaust her administrative remedies. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). The administrative process begins when the complainant files a charge with the EEOC. Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005). The process is exhausted once the EEOC issues a final action letter. See 42 U.S.C. § 2000e-16(c); see also Patterson v. County of Fairfax, No. 94-1218, 1995 U.S. App. LEXIS 70, at *8 (4th Cir. Jan. 4, 1995) (stating that "administrative

remedies are deemed to have been exhausted" when claimant becomes entitled to final action letter); 29 C.F.R. § 1614.407. The final action letter, in turn, triggers the ninety-day deadline to file a civil action. See Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40, 42 (4th Cir. 1993).

The scope of the judicial complaint is not limited to the scope of the charge filed with the EEOC, but rather is limited to the EEOC investigation that reasonably can be expected to follow from the charge. See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir. 2000). Cf. White v. Fed. Express Corp., 729 F. Supp. 1536, 1553 (E.D. Va. 1990) (allegations in the complaint need only be reasonably related to the administrative charges).

Of the four formal claims of discrimination filed by Love, two included charges of race and sex discrimination[3]. The first, Case No. 1D-272-0023-00, was accepted for investigation by the EEOC and a hearing was held. An EEOC Administrative Judge found for the Postal Service on all issues. In a letter entitled "Notice of Final Action," the EEOC stated that it was implementing the Administrative Judge's decision and informed Love of her appeal rights. (Def.'s Mem. Supp. Ex. A, Attach.

_____

[3] On May 7, 2003, Love filed an Information for Pre-Complaint Counseling form, Case No. 1C-272-0025-03, in which she alleged discrimination on the basis of race, disability, and age. (Def.'s Mem. Supp. Ex. A, Attach. 21.) Subsequently, Plaintiff never filed a formal claim of discrimination. Therefore, Plaintiff failed to exhaust her administrative remedies on that charge.

14.) Love appealed the decision. The Office of Federal Operations denied her request for reconsideration on April 29, 2003, which triggered the ninety-day deadline to file a civil action. Love's <u>pro</u> <u>se</u> Complaint was filed on August 6, 2003. However, she submitted the Complaint, along with her Application for Leave to Proceed <u>In Forma Pauperis</u>, to the Clerk's Office on August 1, 2003. For purposes of the ninety-day deadline under 42 U.S.C. § 2000e-16(c), the court will treat the Complaint as timely as it relates to EEOC Case No. 1D-272-0023-00. Therefore, the charges alleged in that complaint are properly before this court.

Love filed a second EEOC complaint, Case No. 1C-272-0021-03, alleging race and sex discrimination on April 6, 2003. The EEOC dismissed her complaint because it found the basis of the complaint was the same as the basis for the instant lawsuit. The letter also informed Love of her appeal rights, including her right to file a civil action. Plaintiff took no further action. Therefore, to the extent that any alleged discrimination in Case No. 1C-272-0021-03 is not reasonably related to the EEOC's investigation of Case No. 1D-272-0023-00, these claims are not within the scope of Plaintiff's Amended Complaint.

A.  Race Discrimination

Absent direct evidence, a plaintiff may prove discrimination inferentially via the <u>McDonnell Douglas Corp. v. Green</u> burden-shifting framework. 411 U.S. 792, 802 (1973). This

framework is predicated on the plaintiff first establishing a
prima facie case of discrimination by demonstrating that "(1) she
is a member of a protected class; (2) she suffered adverse
employment action; [and] (3) she was performing her job duties at
a level that met her employer's legitimate expectations at the
time of the adverse employment action." Hill v. Lockheed Martin
Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004).  In addition,
the circumstances under which the adverse employment action
occurred must raise an inference of unlawful discrimination.
Webster v. Rumsfeld, No. 04-1739, 2005 U.S. App. LEXIS 26297, at
*17 (4th Cir. 2005).

      "An adverse employment action is a discriminatory act which
adversely affects the terms, conditions, or benefits of the
plaintiff's employment.  Conduct short of ultimate employment
decisions can constitute adverse employment action." James v.
Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir.
2004).  "A plaintiff can demonstrate 'an adverse employment
action' by showing, for example, that she was the subject of a
discharge, demotion, decrease in pay or benefits, loss of job
title or supervisory responsibility, or reduced opportunity for
promotion." Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981).
Once a prima facie case is established, the burden shifts to the
defendant who must come forward with a legitimate,
non-discriminatory reason for the challenged employment decision.
See Hill, 354 F.3d at 285.  Once the defendant has articulated
such a reason, the burden shifts back to the plaintiff who must

show that the employer's stated reason is pretextual. Id. "At
this point, the burden to demonstrate pretext 'merges with the
ultimate burden of persuading the court that [the plaintiff] has
been the victim of intentional discrimination.'" Id. (quoting
Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256
(1981)).

Plaintiff's race discrimination claim is based on her
contention that white employees were not repeatedly asked to
provide medical documentation, were not sent home for lack of
documentation, and were accommodated. Yet, Plaintiff provided no
medical documents that indicated the nature of her condition, the
recommended accommodation, or the duration such an accommodation
would be needed. Plaintiff's conclusory statements cannot meet
the need for factual evidence. Even if Plaintiff could establish
a prima facie case, no evidence has been presented that the
employer's need for proper medical documentation was pretextual.


    B.   Sex Discrimination, Sexual Harassment, and Hostile Work
         Environment

Plaintiff's sex discrimination claim appears to be based on
employer harassment and the existence of a hostile work
environment.[4]  To establish a prima facie case of sexual

---

[4] To the extent that Plaintiff's sex discrimination charge
might be based on disparate treatment, her claim would fail for
the same reasons enunciated under race discrimination. See supra
Part II.A.; see also Miles v. Dell, Inc., 429 F.3d 480, 485 (4th
Cir. 2005) (using the McDonnell Douglas burden-shifting analysis
in sex discrimination case).

harassment on a hostile work environment theory, a plaintiff must show that: (1) she was harassed because of her sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some reasonable basis exists for imputing liability to the employer. See Bass v. E. I. DuPont de Nemours & Co, 324 F.3d 761, 765 (4th Cir. 2003). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris v. Forklift Sys., Inc, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring). To decide whether the harassment is sufficiently severe or pervasive, courts "must examine the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996) (quoting Harris, 510 U.S. at 23).

Love points to several incidents in support of her harassment and hostile work environment claim. First, in March of 1999, Burns rubbed her back while congratulating her for teaching a ceramics class. Second, in July of 1999, Burns "run up to" Love with a motorized scooter. Third, on unspecified dates, Burns called Love "the LWOP lady." Fourth, in April of 2001, Burns waited with Love after she had been injured, which

12

she interpreted as an attempt to be alone with her. Finally, in July of 2001, Burns invited Love to a pool party at his home.

These claims are not suggestive of harassment on the basis of sex. Moreover, they do not come close – qualitatively or temporally – to the requirement that the harassment be severe or pervasive.


IV. Age Discrimination

For claims arising under the ADEA, Congress created two avenues of resolution for federal employees. First, the claimant may file a formal complaint with the EEOC, which by analogy requires following the administrative procedures of Title VII. 29 U.S.C. § 633a(b); see also Keene, 232 F. Supp. 2d at 582, n.8 (noting that the exhaustion requirements of Title VII apply to ADEA claims made through EEOC). Second, the claimant may proceed directly to federal court, provided (1) that the claimant notified the EEOC of her intent to sue at least thirty days prior filing suit, and (2) that notice occurred within 180 days of the alleged discriminatory act. See 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a); Keene, 232 F. Supp. 2d at 582, n.8.

The record shows that Love alleged age discrimination twice: once in a formal EEOC complaint, Case No. 1D-272-0023-00, and once in an Information for Pre-Complaint Counseling form, Case No. 1C-272-0025-03. As discussed in Part II, Plaintiff exhausted her administrative remedies with regard to Case No. 1D-272-0023-00, and those issues are properly before the court.

13

With respect to Case No. 1C-272-0025-03, Plaintiff took no further action after filing the Pre-Complaint form. Thus, she failed to meet the requirements of either avenue available under the ADEA.

The ADEA provides that "all personnel actions affecting [certain federal] employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). A plaintiff can establish an ADEA claim either through "evidence showing that age bias motivated the employment decision under the so-called 'mixed-motive' method" or "through circumstantial evidence of discrimination under the 'pretext' method established in McDonnell Douglas and its progeny." Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004); see supra Part II.A. (discussing the McDonnell Douglas analysis).

Love has not offered any evidence, as required under the mixed-motive analysis, that the Postal Service "used a forbidden consideration with respect to any employment practice." Hill, 354 F.3d at 285. Moreover, while Plaintiff is in the protected age class, she has presented no facts in her EEOC complaint, in her Amended Complaint, or in any attachment that could remotely support an inference of age discrimination. Therefore, Love failed to establish a prima facie case.


V.   Disability Discrimination


14

The Rehabilitation Act, like Title VII, requires that claimants must exhaust their administrative remedies prior to filing a lawsuit. <u>See</u> 29 U.S.C. § 794a(a)(1); <u>see also</u> <u>Spencer v. Ashcroft</u>, No. 04-1955, 2005 U.S. App. LEXIS 20293, at *5 (4th Cir. Sept. 21, 2005). Thus, as discussed in Part II, the only issues properly before the court are those raised in EEOC complaint No. 1D-272-0023-00, plus those reasonably raised during the subsequent EEOC investigation.

The Rehabilitation Act states that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . by the United States Postal Service." 29 U.S.C. § 794(a). Implicit within that provision is the requirement that, to qualify for the Act's protections, the plaintiff must have a disability as defined by the statute. <u>See</u> <u>Constantine v. Rectors & Visitors of George Mason Univ</u>, 411 F.3d 474, 498 (4th Cir. 2005); <u>see also</u> <u>Betts v. Rectors & Visitors of the Univ. of Va</u>, No. 02-1567, 2005 U.S. App. LEXIS 16456, at *7 (4th Cir. Aug. 5, 2005) (noting that, in order to state a claim under the Rehabilitation Act, plaintiff must show he has a disability as defined by the Act). A disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff provides little, if any, evidence beyond conclusory statements that she is either physically or mentally disabled. To the contrary, the facts militate against Love's disability claim. In Love's affidavit given during the EEOC's investigation of Case No. 1D-272-0023-00 and dated October 17, 2000, she states that her disabilities "sometimes" prevent her from performing manual tasks, sleeping, walking, and thinking clearly. (Def.'s Mem. Supp. Ex. B, p. 8.) However, she does not explain her condition in any detail. In fact, in the same affidavit, she stated that "[a]t this time I am not disabled." (Id. at p. 7.) Plaintiff did include two documents signed by physicians. The first states that Love "has been treated here at my office since 8/22/80 for anxiety neurosis and general medical problems." (Note from Wayland W. McKenzie, M.D., to Employer on Nov. 2, 1998). That note was written one year and six months prior to the EEOC complaint at issue. Love also offers a letter from her psychiatrist to the EEOC Administrative Judge, which states that "I have been treating Mrs. Love . . . since October of 1998 [and][a]t no time in my treatment of Mrs. Love has she been psychiatrically disabled." (Letter from Parish A. McKinney, M.D., P.A., to The Honorable Theresa R. Jenkins on May 29, 2002.)

Ultimately, Plaintiff has failed to present sufficient evidence that she has an impairment that substantially limits a major life activity, that a record of such an impairment exists, or that the Postal Service regarded her as having such an impairment. Therefore, Love does not have a disability within

16

the meaning of the Rehabilitation Act and is not a member of its protected class.

VI.  Retaliation

Although the Fourth Circuit has never expressly held that either Title VII or the ADEA gives federal employees the right to bring a retaliation claim, the court will assume that such a right exists for the purposes of this case. See Laber v. Harvey, ____ F.3d ____, ____ n.30, No. 04-2132, 2006 WL 348289, at *18, n.30 (4th Cir. Feb. 16, 2006).  A plaintiff may raise certain retaliation claims for the first time in federal court. See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992); see also Salami v. N.C. Agric. & Tech. State Univ., 394 F. Supp. 2d 696, 717 (M.D.N.C. 2005) ("courts have consistently held that retaliation claims may be raised for the first time in federal court if the retaliation occurred after the filing of the administrative charge").  Absent direct evidence, claims of retaliation are also analyzed under the McDonnell Douglas framework.  See Laber, ____ F.3d at ____, 2006 WL 348289, at *18. "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements:  (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005).  If the employer can then articulate a non-retaliatory reason for its action, the plaintiff

17

must show that the employer's proffered reason is pretextual and that the employer retaliated against her. See Laber, ____ F.3d at ____, 2006 WL 348289, at *18; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).

Protected activity is divided into two categories, opposition and participation. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). The participation category applies to an employee who "made a charge, testified, assisted, or participated in any manner in an [EEOC] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The record indicates that Love engaged in this type of protected activity on numerous occasions between 1999 and 2003. The question is whether she suffered any adverse employment actions, and, if she did, whether a causal link exists between her protected activity and any adverse actions she received.

As noted in Part II.A., "[a]n adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James, 368 F.3d at 375-76. In determining whether there is a causal connection between the protected activity and the adverse employment action sufficient to state a prima facie case of retaliation, the Fourth Circuit has "held that a causal connection . . . exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price, 380 F.3d at 213.

18

Construing the _pro se_ litigant's pleadings liberally, the court finds that potentially adverse employment actions did occur after – but not necessarily shortly after – Love's supervisors learned that she had engaged in protected activities. See _Haines v. Kerner_, 404 U.S. 519, 520 (1972) (holding _pro se_ complaint to less stringent standards than one drafted by a lawyer). One of the employment actions claimed by Love to be adverse was the "unsatisfactory attendance and tardiness" warning letter she received on August 3, 2001. However, she had already submitted her letter of resignation in late July and has failed to show that the letter could adversely affect the terms, conditions, or benefits of her employment.

To the extent that Love can establish a _prima facie_ case with regard to other employment actions, the Postal Service has a legitimate, non-discriminatory reason for each action. First, the Postal Service states it sent Love home from work for inadequate medical documentation related to Plaintiff's need for an accommodation. Second, Burns states that Plaintiff's bid to another job was denied because Love was on restricted duty and "[c]lerk craft employees on light or limited duty may not bid to other jobs unless they are fully able to perform the duties of the bid position."[5] (Def.'s Mem. Supp. Ex. H.) Love has

---

[5] While Burns and Gray knew about Love's protected activities, no evidence has been adduced that Burns or Gray were involved in the denial of Love's job bid or that anyone responsible for the denial was aware of Love's protected activity.

19

produced no evidence that either of the stated reasons is
pretextual.

VII. Constructive Discharge

        Exhaustion concerns aside, Love must show that the Postal
Service "deliberately made her working conditions intolerable in
an effort to induce her to quit." <u>Matvia v. Bald Head Island
Mgmt., Inc.</u>, 259 F.3d 261, 272 (4th Cir. 2001) (internal
quotation marks omitted); <u>see also</u> <u>Honor v. Booz-Allen &
Hamilton, Inc.</u>, 383 F.3d 180, 186-87 (4th Cir. 2004) (stating
that the two elements to prove constructive discharge are
(1) deliberate employer action and (2) objective intolerability
of the working conditions).  An employer's actions are deliberate
only if they "were intended by the employer as an effort to force
the plaintiff to quit." <u>Matvia</u>, 259 F.3d at 272.  Determination
of whether an employment environment is intolerable is based on
the objective perspective of a reasonable person. <u>Williams v.
Giant Food Inc.</u>, 370 F.3d 423, 434 (4th Cir. 2004).  "However,
mere dissatisfaction with work assignments, a feeling of being
unfairly criticized, or difficult or unpleasant working
conditions are not so intolerable as to compel a reasonable
person to resign." <u>James</u>, 368 F.3d at 378 (internal quotation
marks and alterations omitted).

        In the year prior to submitting her letter of resignation,
Love cites only a handful of loosely related events in support of
her constructive discharge claim:  (1) she was injured by a

20

falling piece of cinder block, (2) Burns sexually harassed her by waiting with her after an injury, (3) Burns sexually harassed her when he invited her to a pool party at his home, (4) she was denied her bid for another job, and (5) she received a letter of warning. These incidents are insufficient to support Plaintiff's claim. There is no evidence to show her injury was anything other than an accident. Love's sexual harassment claims are difficult to characterize as offensive in any way. Neither Burns nor Gray were involved in denying Love's job bid, which she was ineligible for because she was on restrictive duty. The letter of warning was issued ten days after Love submitted her letter of resignation. In sum, Love has presented no evidence that would satisfy the elements required to prove constructive discharge.

CONCLUSION

For the reasons set forth in this memorandum opinion, Defendant's motion for summary judgment will be granted. Therefore, Defendant's motion to strike is moot.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

_____
United States District Judge

March 1, 2006